Affirmed.

BLAND and HATFIELD, Associate Judges, dissent.

23 C.C.P.A.(Patents)

## In re IMES.

### Patent Appeal No. 3593.

Court of Customs and Patent Appeals.
March 23, 1936.

Forbes Silsby and George B. Campbell, both of New York City, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting claims 1, 5, 6, 7, and 10 to 14, inclusive, of appellant's application for lack of patentability in view of the cited prior art. Appellant has moved to dismiss the appeal as to claim 10, and it will be so ordered.

Claims 1, 10, 11, and 12 were also rejected by the examiner as being broader than the alleged invention disclosed by appellant's application, and this ground of rejection was also expressly affirmed by the Board of Appeals. All of the claims here involved are method claims. A number of method and also apparatus claims were allowed.

Claim 1 is illustrative and reads as follows: "1. The method of melting pitch of high melting point which comprises bringing it in solid form into contact with a heated flux and melting it therein while spraying the flux into gases of higher temperature than the flux."

The references relied upon with respect to the claims before us are:

Warren, 228,960, June 15, 1880.
Davidson (British), 9,034, of 1914.
Butler et al., 1,826,598, October 6, 1931.
Runge (British), 295,946, App. September 6, 1927.

The application relates to melting pitch, and the alleged invention is a method of liquefying a solid high-melting-point pitch by introducing the solid pitch into a hot flux while spraying the flux into hotter gases, so that the heat required for liquefying the pitch is supplied by the hot gases.

High-melting-point pitches are defined in the application as pitches with a melting point of 225° F. or higher.

The patent to Warren relates to roofing and paving material formed by melting together, with agitation, tar and pitch at a suitable high temperature.

The British patent to Davidson relates to a means and method of producing coal gas. The patent states:

"This invention relates to improvements in the means and method of producing gas and particularly to the production of coal gas by the destructive distillation of coal, although it is applicable to other processes in which tar, pitch and similar by-products are produced. The objects of the inven-

tion are to prevent the accumulation of solid pitch in mains, particularly the hydraulic mains of gas plants and to recover pitch direct from such mains as the hot crude gas mains in such plants as comprise vertical retorts or coke ovens or similar plant where the hydraulic mains or equivalents are sufficiently hot. * * *

"A further feature of the invention deals with a process for producing or fractionating pitch and according thereto, the tar, or mixture of tar and pitch, in the main is subjected to the action of the hot gases from the retorts on surfaces which are constantly changed by the agitator, for such a period of time that by fractional distillation by the heat of the gases it is converted into pitch of any degree of hardness required which is fluid when at the temperature of the main but which solidifies upon being run off. * * *"

The patent to Butler et al. states: "This invention relates to processes of continuously mixing together in the liquid state a tarry substance solid at ordinary temperature and a tarry substance liquid at ordinary temperature which substances are initially at different temperatures, but the mixture of which is to be kept within definite temperature limits. This is the case, for example, when a bituminous material such as hot pitch has to be mixed with a tarry material such as virgin tar, residual oil and creosote, or any of them and there is water present. When such liquids are mixed, if the temperature is allowed at any instant to rise too much, frothing results, with, of course, an enormous increase in volume which leads to considerable loss and inconvenience. On the other hand, if the temperature is allowed to fall too low in relation to the melting point of the pitch, the condition known as stringing results, that is the bituminous material coagulates into stringy lumps. It is highly important, therefore to maintain the temperature of the mixture between certain known limits."

The British patent to Runge relates to distillation of tar oil and other materials. It discloses a process somewhat similar to that of Davidson, except that tar is actually sprayed into a still containing hot gases.

All of the appealed claims were rejected by the examiner on the reference Warren, when considered with Davidson or Runge.

The Board of Appeals in its decision stated:

"The Davidson patent appears to us to be the most appropriate and the best example of the references so far as the general process is concerned. This patent provides for introducing hot gases from a furnace for the destructive distillation of coal into a main 1 through the dip pipes 2. It is stated in the Davidson disclosure that an agitator device is employed in the hydraulic main so that pitch which is delivered through the dip or take-off pipes is kept in a continual solution with the tar in the main. A further feature of the invention is said to deal with a process of producing a fractionated pitch and according thereto the tar or mixture of tar and pitch in the main is subjected to the action of the hot gases from the retorts on surfaces which are constantly changed by the agitator for such a period of time that by the heat of the gas it is converted to a pitch of any degree of harshness required and the tar is converted into pitch after it has been subjected to the action of the hot gases for about six hours. This patent also provides for the refilling of the main with tar from other portions of the plant after the tar has been drawn off.

"While claims such as claim 1 refer to the melting of pitch in solid form it is considered that it would not amount to patentable improvement in view of the melting of pitch as indicated in the Warren patent to add pitch to the main of solid form in the process of Davidson. This Davidson process provides for returning pitch to the main to be treated by the gases and it is believed that claims of the type of claim 1 are unpatentable over the art."

We are in accord with the foregoing views of the Board of Appeals.

While it is true that Davidson does not disclose the use of high-melting-point pitch, he does disclose the adding of pitch to the flux. It is also true that the primary object of Davidson's invention was to prevent the accumulation of solid pitch in the mains, particularly the mains of gas plants; but he also had the object of recovering pitch direct from such mains, and in view of the Davidson disclosure we do not think that it would involve invention to add high-melting-point pitch to the flux disclosed by him instead of ordinary low-melting-point pitch, such as Davidson apparently employed.

Appellant, however, insists that none of the references disclose the step of spraying the flux and high-melting-point pitch into gases of higher temperature than the flux. Davidson does, however, disclose a plurality or series of agitator blades or beaters in the lower part of the main, fixed upon a revolving shaft, the purpose of which is to agitate the flux. He states: "By means of the action of the agitator it will be understood that the tar in the main is continually presenting fresh surfaces to the action of the gases so that the process of distillation will be evenly carried out."

The so-called spraying by appellant is accomplished by use of a roll placed in the still, which roll is actuated by a motor and rotates at a high speed and sprays tar and pitch from the bottom of the still up into the hot coke oven gases passing through the still. It was the view of the examiner, acquiesced in by the Board of Appeals, that the agitation of Davidson's process is the equivalent of appellant's spraying since the spraying is merely to afford a better contact of tar, pitch, and gases. We are in accord with this conclusion.

Appellant's counsel expresses the view that the agitating blades of Davidson would be wholly submerged in the flux, and hence no spraying of the same into the hot gases in the still could result. However, the patent to Davidson recites that the level of the tar in the main may be varied by means of a valve, and Davidson's drawings would indicate that his agitator blades would throw the flux into the hot gases in the upper part of the still, with a spraying effect similar to that secured by appellant's roll.

As it is our opinion that all of the claims before us lack patentability in view of the cited prior art, it is unnecessary for us to consider the additional grounds of rejection of claims 1, 11, and 12.

We find no error in the decision of the board holding the claims before us to be unpatentable in view of the cited prior art.

The appeal as to claim 10 is dismissed, and as to all of the other claims before us the decision of the Board of Appeals is affirmed.

Affirmed.